UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BILLY J. RYAN

        Plaintiff,

    v.                        **REPORT AND RECOMMENDATION**
                                     **5:06-CV-01134 (LEK)**

MICHAEL J. ASTRUE,[1]

        Defendant,

## I.    Introduction

     Plaintiff Billy J. Ryan brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[2]  Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his applications for benefits was not supported by substantial evidence and contrary to the applicable legal standards.  The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

     For the reasons set forth below, the Court finds that the Commissioner's decision is supported by substantial evidence and free from legal error.  Therefore, the Court recommends that Plaintiff's motion for judgment on the pleadings be denied and

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of the Social Security Administration.  Pursuant to Federal Rules of Civil Procedure 25(d)(1), he is automatically substituted for former Commissioner Jo Anne Barnhart as the defendant in this action.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated February 23, 2009.

Defendant's cross-motion for judgment on the pleadings be granted.[3]

## II.      Background

On January 20, 2004, Plaintiff filed applications for SSI and DIB, claiming disability since August 1, 2003.[4]  This onset date was later amended to October 13, 2003 (R. at 2p).[5]  Plaintiff alleges disability due to Dysthymia, generalized anxiety disorder, and schizoaffective disorder.  His application was denied initially on March 3, 2004 (R. at 3, 266).  Plaintiff filed a timely request for a hearing on May 12, 2004 (R. at 11).

On September 13, 2005, Plaintiff appeared before the ALJ (R. at 2p).  The ALJ considered the case *de novo* and, on October 26, 2005, issued a decision finding Plaintiff not disabled (R. at 2p-2w).  The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on August 10, 2006 (R. at 2b-2d).  On September 21, 2006, Plaintiff filed this action.

## II.      Discussion

### A.      Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Plaintiff states in his brief that his original onset date was August 1, 2003.  Plaintiff's Brief, p. 1. However, the record indicates that the original onset date was in fact August 2, 2003 (R. at 3, 78, 266). As the onset date was later amended, any error is harmless.
[5] Citations to the underlying administrative record are designated as "R."

not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."

<u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  <u>See</u> 20 C.F.R. §§ 416.920, 404.1520.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); <u>see also Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

**B.    Analysis**

**1. The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the non-disability requirements for a period of disability and DIB set forth in Section 216 of the Act  through December 31, 2008 (R. at 2r); (2) Plaintiff had not engaged in substantial gainful activity since his original alleged onset date of August 1, 2003 (R. at 2r); (3) Plaintiff's affective disorder and anxiety disorders were considered 'severe' (R. at 2r);

(4) Plaintiff's severe impairments do not, either individually or in combination, meet or equal one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1, Regulations No. 4 (R. at 2s).  (5) the ALJ found the following for Plaintiff's residual functional capacity ("RFC"): "[the ability] to perform all exertional level work but due to moderate difficulties in social functioning and in concentration, persistence, or pace, he is limited to performing simple, routine unskilled tasks involving no more than minimal stress (exclude production line work) and no more than minimal contact with the public, co-workers or supervisors" (R. at 2t); (6) Plaintiff's "statements concerning the intensity, duration and limiting effects of [his alleged] symptoms are credible only to the extent of the residual functional capacity determined" (R. at 2t); (7) Plaintiff is defined as a 'younger individual' (R. at 2v); (8) Plaintiff obtained a graduate equivalency diploma ("GED") (R. at 2v).  (9) Plaintiff was capable of performing his past relevant work as a wash attendant, machine operator, and a packer (R. at 2v); (10) Plaintiff was capable of performing the following positions in the national economy: grounds maintenance worker, machine operator, and document preparer (R. at 2v-2w). Ultimately, the ALJ found that Plaintiff was not under a 'disability' as defined by the Act at any point from August 1, 2003, Plaintiff's initial alleged onset date, through the date of the ALJ's decision (R. at 2w).

## 2. The Plaintiff's Claims:

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence and contrary to the applicable legal standards.  Specifically Plaintiff argues that a) the ALJ erred in granting weight to the various medical opinions; b) the RFC is flawed; and c) the vocational expert's ("VE") testimony was flawed.

5

### a.  The ALJ's Analysis of Weight Offers no Basis for Remand

#### i.  The ALJ Did Not Err in Granting Weight to Treating Nurse Practitioner Elizabeth Finn and Psychiatrist Dr. Hartshorn

Plaintiff argues that the ALJ improperly discounted the opinions of Plaintiff's treating physicians.  Plaintiff's Brief, pp. 13-17.  Specifically, Plaintiff argues that the ALJ erred by "pick[ing[ and choos[ing]" from the physicians' opinions and accepted only those opinions which supported his finding of not disabled.  Plaintiff's Brief, p. 13.

According to the "treating physician's rule,"[6] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand."  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Nurse Practitioner Elizabeth Finn was one of Plaintiff's treating sources at Family Counseling Services ("FCS").  Ms. Finn saw Plaintiff regularly from November 20, 2003, to August 14, 2004, and again from March 24, 2005 to June 28, 2005 (R. at 137-146, 191-227).  Although the signature is not entirely legible, it appears that psychiatrist, Dr. Hartshorn, met with Plaintiff on two occasions, also at FCS, on July 16, 2004, and July 20, 2004 (R. at 209, 212).

---

[6] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Ms. Finn completed a psychiatric evaluation on June 7, 2005, which was also signed by Dr. Hartshorn (R. at 183-190).  Ms. Finn diagnosed Plaintiff with Axis I, schizophrenia-paranoia[7] and posttraumatic stress disorder;[8] Axis IV, financial problems, mental illness, and a history of childhood abuse; and Axis V, a global assessment of functioning ("GAF") scale score of 63[9] (R. at 183).  Ms. Finn stated Plaintiff was currently taking Zoloft,[10] Vistaril,[11] Haldol,[12] and Benztropine.[13]  Id.  Ms. Finn stated that Plaintiff's psychotic features included delusions or hallucinations, illogical thinking, blunt affect, flat affect, inappropriate affect, and emotional withdrawal and/or isolation (R. at 184).  Ms. Finn found that Plaintiff presented largely with a depressive syndrome, but also noted Plaintiff presented some symptoms of a manic syndrome (R. at 185).  Ms. Finn identified the following features as part of Plaintiff's mental illness: a) generalized persistent anxiety accompanied by motor tension, apprehensive expectation, and vigilance and scanning; b) a persistent or irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or

---

[7] Paranoid schizophrenia is "a type of schizophrenia characterized by a history of one or more episodes of schizophrenia with prominent psychotic symptoms, current lack of such symptoms, but continuing presence of other schizophrenic symptoms, such as blunted or inappropriate affect, social withdrawal, eccentric behavior, illogical thinking, or loosening of associations."  Dorland's Illustrated Medical Dictionary, 1702 (31st ed. 2007).

[8] "[A]n anxiety disorder caused by exposure to an intensely traumatic event; characterized by reexperiencing the traumatic event in recurrent intrusive recollections, nightmares, or flashbacks, by avoidance of trauma-associated stimuli, by generalized numbing of emotional responsiveness, and by hyperalterness and difficulty in sleeping, remembering or concentrating."  Dorland's at 559.

[9] A GAF scale score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR, 34 (4th ed. 2000) (emphasis in original).

[10] Trademark for sertraline hydrochloride, a "serotonin reuptake inhibitor."  Dorland's at 2120, 1724.

[11] Trademark for hydroxyzine, has "central nervous system depressant, antispasmodic, antihistaminic, and antifibrillatory actions."  Dorland's at 2095, 896.

[12] Trademark for haloperidol, an antipsychotic.  Dorland's at 828.

[13] Used to treat parkinsonism, "a group of neurological disorders characterized by hypokinesia, tremor, and muscular rigidity."  Dorland's at 213, 1404.

situation; c) recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; d) recurrent obsession or compulsions which are a source of marked distress; and e) recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress (R. at 186).

In the restriction of daily living activities category, Ms. Finn found that Plaintiff exhibited marked difficulty in shopping, cooking, cleaning, paying bills, planning daily activities, and initiating and participating in activities independent of supervision and direction (R. at 187).

In the difficulties in maintaining social functioning category, Ms. Finn found that Plaintiff exhibited marked difficulty in communicating clearly and effectively, getting along with family, getting along with friends, getting along with neighbors, displaying awareness of others' feelings, exhibiting social maturity, cooperating with co-workers, responding to supervisors, responding without fear to strangers, establishing interpersonal relationships, holding a job, avoiding altercations, and interacting and actively participating in group activities (R. at 187).

Ms. Finn found that Plaintiff had deficiencies in the task performance and concentration category in independent functioning (requires support and assistance), concentration, and persistence in task (R. at 188). Plaintiff's deficiency in maintaining persistence in tasks included the ability to complete tasks in a timely manner, pace, and the ability to assume increased mental demands associated with competitive work. Id.

With regard to episodes of decompensation, Ms. Finn found that Plaintiff displayed withdrawal from situations, exacerbation of signs of illness, exacerbation of

symptoms of illness, deterioration from level of functioning, decompensation, poor attendance, poor decision making, inability to cope with schedules, and an inability to adapt to changes in a work environment (R. at 188).

Ms. Finn found that Plaintiff had a medically documented history of a chronic psychiatric disorder of at least two years duration (R. at 189).  This disorder has caused more than a minimal limitation of ability to do basic work activities.  Id.  Ms. Finn found that Plaintiff had repeated episodes of decompensation, each of extended duration.  Id.  Ms. Finn opined that Plaintiff had a residual disease process that resulted in such a marginal adjustment that even a minimal increase in mental demands, or change in the environment, would cause Plaintiff to decompensate.  Id.  Finally, Ms. Finn stated that Plaintiff's psychiatric impairment had lasted, or could be expected to last, for at least twelve months (R. at 190).

When granting weight to this assessment, the ALJ stated that

[Ms. Finn's] opinions were given little weight, because Nurse Finn is not an acceptable medical source, does not possess the expertise to make those assessments with accuracy, and her opinions are inconsistent with the record when viewed as a whole.  Although Dr. Mary Hartshorn, a psychiatrist, also signed the psychiatric checklist prepared by Nurse Finn, the opinion is not supported by the progress notes and other evidence of record.  There is no evidence of 12 continuous months where the claimant's medically determinable impairments caused the claimant to experience marked or extreme limitation in activities of daily living, social functioning or concentration, persistence or pace.

(R. at 2u).  Even assuming that Dr. Hartshorn's very brief treatment history with Plaintiff qualified her as Plaintiff's treating physician, and thus her review and ratification of Ms. Finn's psychiatric evaluation conferred back to her the status of treating physician, the

ALJ's finding that Ms. Finn's evaluation was not entitled to controlling weight is supported by substantial evidence.

The ALJ was correct in finding that the progress notes do not support Ms. Finn's very limited evaluation.  Plaintiff claims an onset date of October 13, 2003, which correlates to his admittance to the psychiatric ward of Cortland Memorial Hospital for suicidal ideations (R. at 120).  Plaintiff was discharged on October 15, 2003, free from any suicidal or homicidal ideations (R. at 120).  Plaintiff began treatment at FCS on November 20, 2003 (R. at 146).

Based on Plaintiff's treatment notes from FCS, by January 2004, two months after initiating treatment, Plaintiff began sleeping better, heard fewer voices, and noted feeling less anxious (R. at 142-143).  By February of that year, Plaintiff stated in therapy that he had no nightmares, no paranoia, and did not hear any voices (R. at 139, 142).  Although Plaintiff's therapists noted some relapses around this time period, these largely occurred when Plaintiff neglected to take his medications as prescribed.  See (R. at 204, 207).

From June 2004, until the beginning of August 2004, Plaintiff began experiencing more paranoia, racing thoughts, and nightmares (R. at 205, 207-209, 261).  However, soon after increasing Plaintiff's Lithium[14] on August 5, 2004 (R. at 212), Plaintiff's therapists noted he was doing well and was experiencing fewer nightmares (R. at 212, 206).  Until November 2004, Plaintiff's licensed clinical social worker, Dwight Myers, noted Plaintiff was doing well, he was relatively stable on medications, he had low stress, and his hallucinations and paranoid behaviors had decreased (R. at 255-258).

---

[14] Used to treat "acute manic and hypomanic states in bipolar disorder and in maintenance therapy to reduce the intensity and frequency of subsequent manic episodes;" Dorland's at 1081.

Beginning on November 2, 2004, Mr. Myers noted Plaintiff was feeling increased stress and anxiety in anticipation of an upcoming move (R. at 254).  However, by the end of December, Mr. Myers found that Plaintiff was doing much better on Haldol (R. at 146).

After the change in Plaintiff's medications to Haldol, Plaintiff's therapists continued to note improvement.  For example, on March 24, 2005, Ms. Finn stated that Plaintiff's symptoms were very far and few between, if he was experiencing them at all (R. at 222).  On April 21, 2005, Mr. Myers found that Plaintiff was doing much better, he was not hearing voices or seeing things, and was not experiencing any nightmares (R. at 243).  He did, however, note that Plaintiff's stress level would fluctuate on occasion. Id.  On May 12, 2005, Mr. Myers stated that Plaintiff had not experienced any paranoid ideations or hallucinations in months (R. at 242).

At the end of May 2005 and into June 2005, Plaintiff's stress level again began to rise, also because of moving his residence (R. at 241, 224, 227).  However, by June 30, 2005, Mr. Myers noted that Plaintiff's medications had stabilized his emotions, although Plaintiff was still experiencing a high level of stress (R. at 232).  Plaintiff's condition continued to improve.  For example, on July 28, 2005, Mr. Myers found that Plaintiff was stable on his medications and doing well (R. at 232).

Therefore, based on the record as a whole, substantial evidence supports the ALJ's decision that the opinion proffered by Nurse Finn, and signed by Dr. Hartshorn, is not supported by Plaintiff's treatment history at FCS.  With regard to the ALJ's finding that "[t]here is no evidence of 12 continuous months where the claimant's medically determinable impairments caused the claimant to experience marked or extreme

11

limitation in activities of daily living, social functioning or concentration, persistence or pace[,]" the Court can also find no error as this conclusion is supported by substantial evidence in the record (R. at 2u).

### ii.  The ALJ's Analysis of Weight to Grant the Consultative Examiner Amounts to Harmless Error

Plaintiff argues that the ALJ improperly discounted the opinions of Dr. Kristen Barry, the Social Security Administration ("SSA") consultative examining psychologist. Plaintiff's Brief, pp. 13-17.  Again, Plaintiff argues that the ALJ erred by "pick[ing[ and choos[ing]" from Dr. Barry's opinions and accepted only those opinions which supported his finding of not disabled.  Plaintiff's Brief, p. 13.

If the ALJ does not grant Plaintiff's treating physician controlling weight, as is the case here, he must "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ."  20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).

In her medical source statement ("MSS"), Dr. Barry opined that:

> The claimant, at this time, is able to follow and understand simple directions and instructions but he may have difficulty remaining focused and concentrating given his level of anxiety currently.  The claimant has difficulty handling stresses.  He describes having a tumultuous pass [sic] including some physical abuse.  He has a long history of alcohol and drug dependence.  His judgment is poor.

(R. at 159).

The ALJ found the following when granting weight to Dr. Barry:

> [Dr. Barry] opined that the claimant is able to follow and understand simple instructions and directions. . . .  This opinion was given significant weight, because it is supported by findings on [the] mental status examination and consistent with the record when viewed as a whole.

12

Dr. Barry's opinion that the claimant may have difficulty remaining focused and concentrating, and he has difficulty handling stress was given little weight because it is non-specific and appears to be based on the claimant's unsubstantiated subjective complaints and along with his long history of abusing illegal drugs and alcohol.

(R. at 2t).

Plaintiff argues that "[t]he ALJ cannot pick and choose among limitations reported in a medical record."  Plaintiff's Brief, p. 16.  It is true that the ALJ cannot ignore evidence supporting Plaintiff's claim while at the same time accepting evidence that supports his decision.  See Sutherland v. Barnhart, 322 F.Supp.2d 282, 289 (E.D.N.Y. 2004) (citing Lopez v. Sec'y of Dept. of Health & Human Servs., 728 F.2d 148, 150-151 (2d Cir. 1984) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims.).  Restated, the ALJ must consider all evidence in the record.  See Armstead ex. Rel. Villaneuva v. Astrue, No, 1:04-CV-503, 2008 WL 4517813, at *18 (N.D.N.Y. Sept. 30, 2008) (citing 20 C.F.R. § 416.920(a)(3)).

The ALJ discounted Dr. Kristen Barry's opinions concerning Plaintiff's ability to focus, concentrate, and handle stress, because Dr. Barry's opinions were "based on the claimant's unsubstantiated subjective complaints and . . . his long history of abusing illegal drugs and alcohol" (R. at 2t).  However, Dr. Barry's reliance on Plaintiff's "subjective complaints hardly undermines [her] opinion as to [Plaintiff's] functional limitations, as '[a] patient's report of complaints, or history, is an essential diagnostic tool.'"  Green –Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003).  Also, although Dr. Barry mentioned Plaintiff's history with drugs and alcohol in her report, there is no

13

support for the ALJ's finding that she improperly relied on this history in her opinions (R. at 156-60).  Thus, the ALJ's analysis was flawed.

However, the ALJ included in his RFC that "due to moderate difficulties in social functioning and in concentration, persistence, or pace, he is limited to performing simple, routine unskilled tasks involving no more than minimal stress . . ." (R. at 2t).  Thus, despite granting little weight to Dr. Barry's opinions, he accounted for Plaintiff's difficulties with concentration and stress in his RFC.  Therefore, had the ALJ opted to grant Dr. Barry a greater weight, it would not have affected his RFC.

The Court is aware that the ALJ failed to take into account Dr. Barry's opinion that Plaintiff was limited in his ability to focus.  However, according to the Merriam-Webster Dictionary, one's ability to focus and one's ability to concentrate appear to encompass the same skills.  'Focus' is defined, in this context, as "a center of activity, attraction, or attention" or "a point of concentration."  Focus, *Merriam-Webster's Online Dictionary*, http://www.merriam-webster.com/dictionary/focus.  'Concentrate' is defined, in this context, as "to bring or direct toward a common center or objective : focus."  Concentrate, *Merriam-Webster's Online Dictionary*, http://www.merriam-webster.com/dictionary/concentrate.  Concentrate and focus are also synonyms of one another.  See Concentrate, *Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/thesaurus/concentrate*.  Thus, the Court can find no error in the ALJ's application of 'concentrate' and not 'focus.'

Other courts have found harmless error where the ALJ failed to afford weight to a treating physician when an analysis of weight by the ALJ would not have affected the outcome.  See Jones v. Barnhart, 2003 WL 941722, at *10 (S.D.N.Y. Mar. 7, 2003)

(internal citations omitted) (finding harmless error in the ALJ's failure to grant weight to Plaintiff's treating physicians because "he engaged in a detailed discussion of their findings, and his decision does not conflict with them"); Walzer v. Chater, 1995 WL 791963, at *9 ("[T]he ALJ's failure to [discuss a report completed by Plaintiff's treating physician] was harmless error, since his written consideration of [the] report would not have changed the outcome of the ALJ's decision.").   Following this line of precedent, it is logical to conclude that although the ALJ improperly discounted Dr. Barry's opinions, but nevertheless included those opinions in his RFC, whatever error he may have committed, the Court considers it also constitutes harmless.

### b.  The ALJ's RFC Finding is Supported by Substantial Evidence

Plaintiff appears to be arguing that the RFC is flawed because it fails to take into account certain limitations submitted by Nurse Finn and Dr. Hartshorn.  Plaintiff's Brief, pp. 17-19.  However, as the Court has already found no reason to remand based on his assessment of Plaintiff's examining physicians, and the Plaintiff does not state to which limitations he is referring, the Court can find no error in the ALJ's analysis of the RFC.

### c.  The Testimony of the VE is Not Flawed

Plaintiff's final argument is that the testimony of the VE is flawed because she failed to include the numbers of the relevant positions in the Dictionary of Occupational Titles ("DOT") during her testimony.  Plaintiff's Brief, pp. 18-24.  Plaintiff also argues that the VE's testimony was in conflict with O*Net.[15]  Id.

---

[15] Occupational Information Network.  Intended to "supersede[] the . . . *Dictionary of Occupational Titles* . . . ."  United States Department of Labor, *O*NET – beyond information – intelligence*, http://www.doleta.gov/programs/onet/ (emphasis in original).

The VE testified that based on the ALJ's hypothetical, which was an accurate representation of Plaintiff's RFC, Plaintiff could perform his past relevant work as a wash attendant, machine operator, or a packer (R. at 298).  The VE also opined that Plaintiff was capable of performing other positions in the national economy, including a grounds maintenance worker, a machine operator, and document preparer (R. at 298-299).  Although the VE stated that her testimony was consistent with the DOT, she failed to state the DOT codes for the positions to which she was referring (R. at 299).

The Court can find no error in the VE's failure to supply the DOT codes.  The ALJ has an affirmative responsibility to ask whether the VE's testimony is in accordance with the DOT and to resolve any conflicts that may arise.  SSR 00-4p, 2000 WL 1898704, at *4.  The ALJ complied with this requirement by making the necessary inquiry, and the VE replied that her testimony was consistent with the codes. (R. at 299).  There is no requirement that the VE testify as to which DOT codes she relied upon.  Thus, the ALJ did not err.

Plaintiff argues that the VE's testimony does in fact conflict with the DOT, despite the VE's statement to the contrary.  Plaintiff's Brief, pp. 19-24.  Plaintiff appears to be basing this argument on his application of O*Net.  However, Plaintiff's reliance on O*Net is misplaced.  Even if the VE's testimony was in conflict with O*Net, there is no requirement that the VE's testimony comply with that database.  Instead, the VE's testimony must comply with the DOT, and if there is a conflict between the VE testimony and the DOT, then an explanation must be given.  SSR 00-4p, 2000 WL 1898704, at *4.  Here the Court can find no conflict. Thus, the ALJ did not err.

## Conclusion

16

Based on the foregoing, it is recommended that Defendant's motion for judgment on the pleadings should be GRANTED and Plaintiff's cross motion for judgment on the pleadings should be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:        June 2, 2009

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v.*

*Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v.*

*Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

      Let the Clerk send a copy of this Report and recommendation to the attorneys for

the Plaintiff and the Defendants.

SO ORDERED.

_____

Victor E. Bianchini
United States Magistrate Judge


DATED:      June 2, 2009